UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 162-1 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WING NUEN LIU, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

A grand jury charged Wing Nuen Liu with two counts of conspiracy to distribute a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Doc. 35. Liu pleaded guilty to one count, which charged no quantity. Doc. 155. Following a bench trial, the court found him guilty on the other count, which charged a quantity of 100 kilograms or more. Doc. 159. Liu moved *pro se* under Criminal Rule 29 for a judgment of acquittal, Doc. 191, and substitute counsel renewed the motion, Doc. 236. The motion is denied.

**Background**

The principal issue at trial was the amount of marijuana trafficked as part of the conspiracy. Doc. 236-1 at 15:22 (defense counsel's assertion in opening statements that "the sole issue … will be the quantities involved"); *id*. at 391:13-391:16 (the court's post-trial observation that "[t]he only element of Count 1 that Mr. Liu truly contests is … whether the conspiracy was to distribute 100 kilograms of marijuana, or whether there was some lesser amount"). The Government's key witness was Tony Sam, a co-conspirator who had pleaded guilty. Docs. 96-97. Sam testified about his role in receiving shipments of marijuana, and

1

traveling to California to purchase and transport marijuana, on behalf of the conspiracy in 2016. Doc. 236-1 at 136:1-142:7 (shipments); *id*. at 144:11-176:19 (travel and transportation). On what turned out to be his last trip back from California, in August 2016, Sam was arrested with approximately 60 pounds of what both he and the police identified as marijuana. *Id*. at 83:20-83:21, 172:11-177:21, 288:9-289:21. A forensic scientist testified that the substance consisted of marijuana plant materials containing cannabinoids, *id*. at 101:11-103:4, but later clarified that he had not determined its concentration of delta-9 tetrahydrocannabinol ("THC"), *id*. at 105:16-106:5.

The court found Sam's testimony credible, including as to the amount of marijuana trafficked, which exceeded 100 kilograms. *Id*. at 391-399. And the court found Liu guilty of conspiracy to distribute 100 kilograms or more of a substance containing marijuana. *Id*. at 399:16-399:18.

**Discussion**

Criminal Rule 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant challenging the sufficiency of the evidence must convince [the court] that even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010) (internal quotation marks omitted).

Liu no longer contests the quantity element of the charge of which he was convicted. Instead, he contends that a provision of the 2018 Farm Bill amending the definition of marijuana in the Controlled Substances Act ("CSA") to exclude "hemp" applies retroactively to his

2

pre-amendment conduct. Doc. 236 at 4-10; *see* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 12,619, 132 Stat. 4490, 5018 (codified at 21 U.S.C. § 802(16)). And he argues that the evidence at trial cannot sustain the conviction because the Government failed to prove that the conspiracy involved marijuana, as opposed to hemp. Doc. 236 at 10-11. Neither part of his argument is correct: the 2018 amendment is not retroactive and, even if it were, the evidence at trial would support his conviction.

I.  **Retroactivity of the 2018 Farm Bill Amendment**

As a result of the 2018 amendment, the CSA differentiates "hemp," defined in 7 U.S.C. § 1639*o*, which is not a controlled substance, from marijuana, which remains a controlled substance. *See* 21 U.S.C. § 802(16)(A), (B)(i) (defining "marihuana" as "all parts of the plant Cannabis sativa L.," excluding "hemp, as defined in section 1369*o* of title 7"). Both substances are derived from the plant Cannabis sativa L., but hemp's THC concentration does not exceed "0.3% on a dry weight basis." 7 U.S.C. § 1639*o*(1). So, when Liu was tried in 2019, it was not a crime to (conspire to) distribute material derived from Cannabis sativa L., provided that its THC concentration did not exceed 0.3%.

But Liu's conduct occurred before the 2018 amendment, and under the general federal saving statute, the repeal of a criminal law presumptively "shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute" before the repeal. 1 U.S.C. § 109. The saving statute applies with full force to amendments of criminal laws, such as the 2018 amendment to the CSA. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Crucially, "penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable," not when a court enters a judgment of conviction. *Dorsey v. United States*, 567 U.S. 260, 272 (2012). Thus, because Liu's conduct occurred in 2016, Doc. 236-1 at 131:5-131:15 (describing Liu's role in the

3

conspiracy between January and August 2016), the saving statute presumptively makes him subject to criminal liability under the pre-amendment CSA.

Congress can override the saving statute by making the repeal or amendment of a criminal law retroactive, "either expressly or by implication." *Dorsey*, 567 U.S. at 274; *see also United States v. Sparkman*, 973 F.3d 771, 774 (7th Cir. 2020) ("[A] statute adopting new, more lenient penalties does not apply to pre-enactment offenses unless retroactive application is the 'plain import' or 'fair implication' of the new statute.") (quoting *Dorsey*, 567 U.S. at 275). But nothing in the text of the 2018 Farm Bill indicates any intent to make retroactive its amendment to the definition of marijuana. *See* § 12,619, 132 Stat. at 5018. Similarly, to the extent that legislative history matters, Liu identifies, and the court can find, none suggesting that Congress intended the amendment to apply retroactively. *See*, *e.g.*, H.R. Rep. No. 115-1072, at 788 (2018) (Conf. Rep.). And the mere fact that Congress carved out hemp from the definition of marijuana, thereby making previously illegal conduct (distributing hemp) legal, is insufficient to overcome the presumption, for otherwise every repeal or amendment would overcome the saving statute. Accordingly, with no valid basis to conclude that the amendment "should be applied to pending prosecutions, the saving statute is applicable to [Liu's] conviction." *United States v. Stillwell*, 854 F.2d 1045, 1048 (7th Cir. 1988) (citation omitted).

Urging the contrary conclusion, Liu cites cases interpreting the term "controlled substance offenses" in the Sentencing Guidelines. Doc. 236 at 9-10. Those cases do not help him because, as the Supreme Court explained, "the Sentencing Reform Act sets forth a special and different background principle" that overcomes the presumption established by the saving statute. *Dorsey*, 567 U.S. at 275 (emphasis deleted). Specifically, the Sentencing Reform Act provides that a sentencing court ordinarily must apply the Guidelines provisions "in effect on the

date the defendant is sentenced," not those in effect when the defendant committed the crime or was convicted. 18 U.S.C. § 3553(a)(4)(A)(ii); *see also* U.S.S.G. § 1B1.11. The cases cited by Liu rely on this principle to hold that whether a prior conviction involved a "controlled substance offense" for Guidelines calculation purposes depends on the substance's status at the time of sentencing, not at the time of conviction. *See United States v. Abdulaziz*, 998 F.3d 519, 529 (1st Cir. 2021); *United States v. Williams*, 850 F. App'x 393, 398 (6th Cir. 2021); *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021). In other words, a change in a controlled substance's status can be retrospective for Guidelines purposes because of the unique context provided by the Sentencing Reform Act. As shown above, the 2018 amendment does no such thing with the carving out of hemp from the definition of marijuana.

Liu's reliance on *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny is likewise misplaced. Under *Teague*, new rules of constitutional law that "alter the range of conduct or the class of persons that the law punishes" are considered substantive, *Edwards v. Vannoy*, 141 S. Ct. 1547, 1562 (2021) (internal quotation marks omitted), and substantive rules must be applied retroactively because "[t]here is no grandfather clause that permits States to enforce punishments the Constitution forbids," *Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016). *Teague* thus provides that "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void." *Id*. at 203. But nothing in the Constitution forbids the saving statute from preserving criminal liability for conduct that was illegal when it occurred, though legal when the conviction was entered or sentence imposed, provided that the repealed criminal statute was constitutional. *See United States v. Robinson*, 405 F. App'x 72, 73 (7th Cir. 2010) (distinguishing retroactive application of "a Supreme Court

5

decision" interpreting the Constitution from "amendments to *legislation* that alter penalties but create no new rights").

Liu also suggests that the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, might provide a constitutional basis for a judgment of acquittal. Doc. 236 at 8-9. But "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (footnotes omitted). Neither element is present here. The 2018 amendment is not retrospective by virtue of the saving statute, and even if it were, the change would reduce, not increase, the penalties for hemp offenses. *See Dorsey*, 567 U.S. at 275 (noting that the Ex Post Facto Clause "does not prohibit applying lower penalties"). It follows the Ex Post Facto Clause does not advance Liu's position.

Because the 2018 amendment was not retroactive, Liu was properly convicted under the pre-amendment version of the CSA—which did not differentiate hemp from marijuana— regardless of whether the conspiracy's object would be considered hemp today.

## II. Sufficiency of the Evidence

Even if the 2018 amendment were retroactive, the evidence admitted at trial would support his marijuana distribution conspiracy conviction. Liu correctly notes that no laboratory evidence confirmed that the substances recovered from Sam had a THC concentration above the new 0.3% threshold. Doc. 236 at 3-4; Doc. 236-1 at 105:20-106:13. Still, the Government may prove a drug's identity through circumstantial evidence, including "on-the-scene remarks by a conspirator identifying the substance as a drug; lay-experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales." *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) (internal quotation marks omitted). Here, two pieces of circumstantial evidence support the conviction.

First, Sam's testimony exclusively used the term "marijuana," not "hemp," to describe the object of the conspiracy. *E.g.*, Doc. 236-1 at 150:2-153:5 (explaining Liu's role in trips to California "[t]o purchase marijuana"); *id*. at 158:17-159:15 (explaining how the conspirators sourced higher-grade "marijuana"); *id*. at 164:16-164:18 (explaining that "marijuana" was purchased on one trip); *id*. at 172:22-172:23 (identifying the substance recovered by police as "marijuana"); *see generally id*. at 128-178, 185-205 (Sam's testimony about "marijuana" trafficking). That testimony is best understood to refer to the controlled substance "marijuana," not "hemp." In an analogous case where the defendant argued that the evidence was insufficient to sustain a conviction because the term "marijuana" could also refer to "wild tobacco," the Seventh Circuit explained that a factfinder may use an "ordinary measure of common sense and everyday knowledge, an example of which is that our society customarily uses the term 'marijuana' to refer to cannabis, not wild tobacco." *United States v. Wornock*, 595 F.2d 1121, 1124 (7th Cir. 1979). The court concluded that "[t]he use of this term [marijuana] alone is therefore substantial and sufficiently probative evidence to support the jury's finding that the object of the conspiracy was the importation of cannabis." *Ibid*. The same result obtains here.

Second, the Government presented evidence that the prices paid by Liu and his co-conspirators were consistent with the market price of marijuana. An expert witness testified that the prevailing market prices of marijuana ranged from $1,000 to $1,600 per pound. Doc. 236-1 at 120:15-120:24. Sam testified that he paid $18,000 for approximately 10 pounds of marijuana on one trip, *id*. at 150:11-151:10, 151:19-151:25, approximately $1,800 per pound. And he testified that on another trip, the conspirators paid at least $100,000, *id*. at 169:14, for approximately 60 pounds of marijuana, *id*. at 172:24-172:25, more than $1,600 per pound. The Government now asserts, and Liu does not dispute, that those prices vastly exceed the market

7

per-pound price for hemp. Doc. 243 at 9 (explaining that the most expensive hemp sells for $25 to $200 per pound) (citing Cong. Rsch. Serv., R44742, Defining Hemp: A Fact Sheet 8 (updated Mar. 22, 2019)); Doc. 249 at 4-5 (not disputing these figures). The prices paid by Liu and his co-conspirators thus show that marijuana, not hemp, was the object of the conspiracy.

Liu accuses the Government of circular reasoning because, at trial, it sought to bolster the credibility of Sam's testimony as to the quantity of marijuana the conspiracy trafficked by dividing the total sum the conspirators paid by an estimated per-pound market price of marijuana to calculate an approximate quantity of marijuana purchased. Doc. 236-1 at 373:13-374:5. If the Government had used that calculated quantity to recreate the per-pound price paid by the conspirators, then its reasoning in fact would be circular. But that is not what the Government has done. Instead, the Government's reasoning in opposing Liu's motion—that dividing the quantity of marijuana purchased by the amount paid shows that the conspirators paid per-pound prices that were consistent with marijuana and too high for hemp—relies directly on Sam's testimony regarding the quantity of marijuana the conspirators purchased. That testimony was credible even without corroboration from the Government's calculation. Doc. 236-1 at 392:8-394:20, 398:10-398:14, 398:23-399:4 (the court's other reasons for finding Sam's testimony credible). And that quantity, in turn, can be used to show that the prices paid by the conspirators were consistent with marijuana, not hemp.

Finally, Liu cites *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020), for the proposition that "[l]aw enforcement officers find it nearly impossible to distinguish between low THC smokable hemp and marijuana in the field." Doc. 249 at 5. *C.Y. Wholesale* does not articulate that holding; rather, Indiana "represented to the court that one reason" for the enactment of certain provisions in a challenged state law was "that its law enforcement officers

find it nearly impossible to distinguish between low-THC smokable hemp and marijuana in the field." *C.Y. Wholesale*, 965 F.3d at 544. Indiana's representation casts no doubt on *Sanapaw*'s holding that circumstantial evidence can prove the identity of a drug in a federal criminal case.

## Conclusion

Liu's motion for a judgment of acquittal is denied.

January 20, 2022

_____
United States District Judge